IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HELEN VINING,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:06-CV-1023-VEH |
| | ) |
| **WAL-MART STORES EAST, L.P.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

**I.   INTRODUCTION**

Plaintiff Helen Vining ("Vining") initiated this lawsuit in the Circuit Court of Jefferson County on April 18, 2006. (Doc. #1 at Compl.). Defendant Wal-Mart Stores East, L.P. ("Wal-Mart")[1] removed the litigation to this court on May 26, 2006, on the basis of federal court diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. #1). Vining did not contest the removal.

Pending before the court is Wal-Mart's Motion for Summary Judgment (Doc.

---

[1] According to its Motion for Summary Judgment (Doc. #8 at 1), Wal-Mart Stores East, L.P. (and not Wal-Mart Stores, Inc.) is the appropriate legal name of the defendant. By Order dated April 11, 2007, the court ordered Vining to Show Cause why Wal-Mart Sotres East, L.P. should not be substituted for Wal-Mart Stores, Inc. (Doc. #13). On April 17, 2007, Vining responded that the name substitution was appropriate (Doc. #14). Therefore, the court will order such substitution.

#8) filed on February 5, 2007.  The parties have filed their evidence and briefs, and Wal-Mart's Motion for Summary Judgment is now ripe for a decision.  As discussed more fully below, Wal-Mart's Motion for Summary Judgment is due to be granted, and Vining's complaint is due to be dismissed with prejudice.

## II.     BURDEN ON SUMMARY JUDGMENT

As the Eleventh Circuit has recently summarized the burden on summary judgment, including those instances in which an affirmative defense is in issue:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quotations and emphasis omitted).  If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense. *See Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir.2003).

*International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1273 -74 (11th Cir. 2006).

## III. STATEMENT OF FACTS[2]

### A. Vining's Background

Vining, age 63, worked at Zippy Mart for several years prior to the incident made the basis of the complaint. AF No. 1.[3] As a cashier at Zippy Mart, she also was responsible for keeping the floors clean and stocking shelves. AF No. 2.

Prior to the incident, Vining went to the Bessemer Wal-Mart store approximately five to six times a month. AF No. 3. She generally parked near and entered the store through the garden center. AF No. 4.

---

[2] If the facts are in dispute, they are stated in the manner most favorable to Vining, the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Additionally, these are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[3] The designation "AF" stands for admitted fact and indicates a fact offered by Wal-Mart that Vining has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case. Whenever Vining has adequately disputed a fact offered by Wal-Mart, the court has accepted Vining's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Wal-Mart's Statement of Facts as set forth in Doc. #9 and responded to by Vining in Doc. #10. Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Vining's Additional Undisputed Facts contained in Doc. #10 and responded to by Wal-Mart in Doc. #12. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

**B.     Vining's Accident**

The date of the incident, April 20, 2004, was a clear, sunny day. AF No. 5. Vining entered the store at approximately 2:30 p.m. through the garden center gate. AF No. 6.

Although she saw customers in the area, she did not see any Wal-Mart employees at the time she entered the chain link fence gate in the patio area of the garden center. AF No. 7. The floor area immediately inside the chain-linked fence of the garden area is a light-colored concrete. AF No. 8.

At the time she entered the garden center, although there were people in the area, there was no one in the 10 to 15 feet ahead of her. AF No. 9. There was plenty of light in the area, she could see where she was going, and she did not have anything in her hands. AF No. 10.

Vining has no memory of looking down at the cement flooring ahead of her from the time she entered the gate to the time she fell. AF No. 11. Vining denies that she saw any uneven place in the concrete prior to the time she fell. AF No 12.

According to Vining's testimony, she walked 10 feet into the garden center, stumped her toe on an "uneven part" of the concrete, and fell. AF No. 13. Prior to the time she fell, she did not look down and see her foot at this uneven place in the concrete. AF No. 14. Therefore, although she recalls that one of her feet hit

something, she did not see what her foot actually hit.  AF No. 15.

Vining additionally does not remember how she fell to the ground.  AF No. 16. After the incident, she was assisted from the floor into a chair.  AF No. 17.

While she sat in the chair, she looked in the general vicinity of where she fell. AF No. 18.  Although the chair was approximately five feet from the area, while she sat in the chair, she could see an uneven place in the concrete.  AF No. 19.

Vining admits that if she had seen the uneven place prior to the incident that she would not have run her foot into it as she definitely recognized it as a trip hazard. AF No. 20.  She admits that she had no trouble seeing what she described as a "big place" after the incident.  AF No. 21. Vining concedes that if she had looked down prior to the incident when she was three to five feet from this uneven place in the concrete that she would have seen it, and would have recognized it as a hazard.  AF No. 22.  Vining also admits that if she had looked down prior to the incident, she would have seen the uneven place and would have walked around it.  AF No. 23.

**C.   Wal-Mart's Response to Vining's Accident**

Johnnie M. Fuller ("Fuller") is the risk team leader for the Bessemer, Alabama Wal-Mart store, and has worked for the Bessemer Wal-Mart for 22 years.  AF No. 24. Her duties as risk team leader include the investigation of customer accidents.  AF No 25.

Fuller was alerted to the incident involving Vining, which occurred at approximately 2:30 p.m., and she went to the garden center to speak to Vining. AF No. 26. Vining told Fuller that she fell on an uneven surface in a part of the garden center referred to as the patio. AF No. 27.

Vining testified that one of Wal-Mart's agents stated to her immediately following the fall: "We have told them about this and they haven't fixed it." Doc. #8 at Ex. 1 at 101; AAF No. 1.[4] Photographs taken after the fall and Vining's testimony reflect that Wal-Mart repaired the premises by resurfacing it following the incident. AAF No. 2.[5]

---

[4]While in its reply, Wal-Mart indicates that it disputes this additional fact offered by Vining (Doc. #12 at 1 § I.1.), it offers no evidentiary basis to counter Vining's testimony, and therefore under the court's Uniform Initial Order, the fact is deemed admitted. Moreover, even if Wal-Mart had evidence that created a material factual dispute as to this testimony, the court is obligated to take the facts in the light most favorable to Vining as the non-movant.

[5]Wal-Mart attempts to offer evidence that the highest height differential between the sections of concrete flooring where Vining fell is one quarter inch as measured by Wal-Mart. (Doc. #8 at Ex. 4 ¶ 5). In her opposition brief (Doc. #10 at 1 § I.a.5.; *id.* at 3-4), Vining has sought to strike this evidence on the basis of hearsay because the Fuller affidavit fails to identify who took the measurements and how they were taken relative to the spot where Vining fell. The court further notes that Wal-Mart's brief makes reference to an "Exhibit 12" as evidentiary support of the one quarter inch measurement (Doc. #9 at 12 ("The height differential between the two sections of pavement is one quarter inch (Exhibit 12), which certainly is reasonable under the circumstances.")). However, the court is unable to locate an "Exhibit 12" within any of Wal-Mart's evidentiary materials. (*See generally* Doc. #8 at Exs. 1-4). Accordingly, the court agrees with Vining that the statement (Doc. #8 at Ex. 4 ¶ 5)

**D.     Description of Concrete Area in Garden Center**

The concrete area in the garden center is an outside section of the garden center which is surrounded by a chain link fence. AF No. 28. The flooring in the area is concrete. AF No. 29. The concrete in this part of the garden center was installed in about 1995. AF No. 32.

## IV.    ANALYSIS

**A.     Negligence and Wantonness Claims Under Alabama Law**

Negligence requires proof of the following elements by Vining: "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala.1994). Also, "[n]egligence is a mixed question of law and fact. Whether the defendant in a negligence action owed the claimant a duty is strictly a question of law." *Jones Food Co., Inc. v. Shipman*, No. 1051322, 2006 WL 3718254, *5 (Ala. Dec. 15, 2006) (citing *RaCON, Inc. v. Tuscaloosa County*, No. 1031512, 2006 WL 2089892 (Ala. July 28, 2006)).

As for Vining's claim of wantonness:

> "Wantonness has been defined as the conscious doing of some act or the omission of some duty [with] knowledge of existing conditions

---

relating to the highest height differential is due to be and is **HEREBY STRICKEN** on the basis of hearsay.

and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result, and before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the result."

*Avery v. Geneva County*, 567 So. 2d 282, 289 (Ala. 1990) (citing *Roberts v. Brown*, 384 So. 2d 1047, 1048 (Ala.1980)).

### B.     Duty of Care Owed to Vining as a Patron-Invitee

In *Ex parte Kraatz*, the Supreme Court of Alabama stated regarding the duty owed to customers of a business:

> "Generally, a patron of a business, such as a shopping center, is an invitee. . . . An invitor's duty to an invitee is to keep his premises in a reasonably safe condition, and, if the premises are unsafe, to warn of hidden defects and dangers that are known to it, but that are unknown or hidden to the invitee." *Raspilair v. Bruno's Food Stores, Inc.*, 514 So. 2d 1022, 1023-24 (Ala.1987).

*Ex parte Kraatz*, 775 So. 2d 801, 803 (Ala. 2000).

The *Ex parte Kraatz* court further summarized:

> "'[T]he owner of the premises . . . is not an insurer of the safety of his invitees,'" and no "'presumption of negligence aris[es] out of the mere fact of injury to an invitee.'" *Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So. 2d 158, 161 (Ala.1997) (quoting *Shaw v. City of Lipscomb*, 380 So. 2d 812, 814 (Ala. 1980)). "The premises owner has no duty to warn the invitee of open and obvious defects in the premises, which the invitee is aware of or should be aware of through the exercise of reasonable care." *Woodward v. Health Care Auth. of the City of Huntsville*, 727 So. 2d 814, 816 (Ala. Civ. App. 1998). "A condition is

> 'obvious' if the risk is apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee." *Woodward*, 727 So. 2d at 816. "A condition is 'known' if the invitee is aware of the existence of the condition and appreciates the danger it involves." *Id.* "Questions of openness and obviousness of a defect or danger and of an [invitee's] knowledge are generally not to be resolved on a motion for summary judgment." *Harding v. Pierce Hardy Real Estate*, 628 So. 2d 461, 463, (Ala. 1993). *See also Woodward, supra.* Additionally, "this Court has indicated that even though a defect is open and obvious, an injured invitee is not barred from recovery where the invitee, acting reasonably, did not appreciate the danger of the defect." *Young v. La Quinta Inns, Inc.*, 682 So. 2d 402, 404 (Ala.1996).

775 So. 2d at 803-04.

Similarly, in *Denmark v. Mercantile Stores Co., Inc.*, 844 So. 2d 1189 (Ala. 2002), the Supreme Court of Alabama described the duty owed to business customers:

> A store owner's duty is well-established. That duty is "to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers." *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990). Consequently, injured "plaintiffs must prove that the injury was proximately caused by the negligence of [the store owner] or one of its servants or employees. Actual or constructive notice of the presence of the substance [or instrumentality that caused the injury] must be proven before [the store owner] can be held responsible for the injury." *Id.* Where, however, "'"the defendant or his employees have affirmatively created the dangerous condition, [the] plaintiff need not introduce evidence that [the] defendant had actual or constructive knowledge of the hazard. Under such circumstances, the courts presume notice."'" *Wal-Mart Stores, Inc. v. Rolin*, 813 So. 2d 861, 864 (Ala. 2001) (emphasis added) (quoting *Wal-Mart Stores, Inc. v. McClinton*, 631 So. 2d 232, 234 (Ala. 1993), quoting in turn Joseph A. Page, The Law of Premises Liability § 7.11 at 169 (2d ed.1988)). *See also Mims v. Jack's*

*Restaurant*, 565 So. 2d 609 (Ala. 1990).

*Denmark*, 844 So. 2d at 1194.

The *Denmark* decision also makes it clear that reliance upon an open and obvious hazard to defeat a negligence claim is an affirmative defense upon which the store owner bears the ultimate burden of proof:

> However, Mercantile's argument that the condition that caused Mrs. Denmark's fall was open and obvious is an affirmative defense, on which it bears the ultimate burden of proof. *See Ex parte Neese*, 819 So. 2d 584 (Ala.2001); *Furgerson v. Dresser Indus., Inc.*, 438 So. 2d 732, 734 (Ala.1983); *see also Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So. 2d 1162, 1165 (Ala.1992) ("the traditional common-law 'open and obvious danger' defense ... completely bars recovery if the danger is known by, or is obvious to, the plaintiff") (Hornsby, C.J., concurring in the result)); *Vick v. H.S.I. Mgmt., Inc.*, 507 So. 2d 433, 435 (Ala.1987) ("'[T]he evidence, including evidence bearing on the defense of "open and obvious danger," viewed in light of the applicable substantive law, presents genuine issues of fact.'"); *Coggin v. Starke Bros. Realty Co.*, 391 So. 2d 111, 113 (Ala. 1980); *Ford v. Bynum Livestock & Comm'n Co.*, 674 So. 2d 600, 603 (Ala. Civ. App. 1995) ("dispositive issue [is] whether the evidence conclusively showed that [the plaintiff] knew of, and appreciated, a dangerous condition so as to give rise to the 'open and obvious danger' defense").

844 So. 2d at 1194-95.

### B.   Application of Patron-Invitee Duty of Care to Vining's Accident

Wal-Mart bases its Motion for Summary Judgment on Vining's negligence and wantonness claims upon an open and obvious affirmative defense and alternatively upon Vining's inability to show an actionable defect in the concrete flooring at its

Bessemer store. The court addresses Wal-Mart's defect argument first.

### 1. Vining is unable to show sufficient evidence of an unreasonable defect.

The evidentiary record taken in a light most favorable to Vining demonstrates that summary judgment in favor of Wal-Mart is appropriate as to Vining's negligence and wantonness claims because Vining lacks insufficient evidence of a requisite defect. More specifically, Wal-Mart is entitled to summary judgment on this particular basis because Vining lacks proof from which a reasonable jury could conclude that the "irregularity [in the concrete] create[d] a danger." *Howard v. Andy's Store for Men*, 757 So. 2d 1208, 1211 (Ala. Civ. App. 2000).

As summarized in *Howard* regarding a defective condition pertaining to differences in ground elevations:

> In Alabama, however, whether an elevation irregularity in a sidewalk, curb, or threshold constitutes an unreasonably dangerous condition or defect has, so far as we are able to tell, always been held to be an issue of fact when the plaintiff has presented evidence indicating that the irregularity creates a danger. *See, e.g., Stephens v. City of Montgomery*, 575 So. 2d 1095 (Ala. 1991); *Mann v. Smith*, 561 So. 2d 1112 (Ala. 1990); *Bogue v. R & M Grocery*, 553 So. 2d 545 (Ala. 1989); *Waits v. Crown Dodge Chrysler-Plymouth, Inc.*, [Ms. 2981305, December 17, 1999] --- So. 2d ---- (Ala. Civ. App. 1999); *Williams v. Harold L. Martin Distrib. Co., Inc.*, [Ms. 2971300, May 21, 1999] --- So. 2d ---- (Ala. Civ. App. 1999); *Woodward v. Health Care Auth. of the City of Huntsville*, 727 So. 2d 814 (Ala. Civ. App. 1998).

*Howard*, 757 So. 2d at 1211.

As analyzed in *Howard* and with the exception of the *Stephens* decision, all five (5) of the above-cited cases involved the use of an expert witness to substantiate the defective nature of the irregularity on the ground and/or the related conditions (*e.g.*, poor lighting) that allegedly caused the fall. *See Howard*, 757 So. 2d at 1212 (engineer as expert in *Mann*; engineer as expert in *Bogue*; architect as expert in *Waits*; architect as expert in *Williams*; and use of expert testimony in *Woodward*). Unlike the plaintiffs in *Mann*, *Bogue*, *Waits*, *Williams*, *Woodward*, and *Howard* (*see id.,* 757 So. 2d at 1209-10 (mechanical engineer testifying as expert)), Vining has no expert testimony from which a reasonable jury could conclude that the irregularity in the concrete elevations created an actionable danger.[6]

"In *Stephens*, the supreme court reversed a summary judgment for the City in a trip-and-fall case, holding that evidence of an uneven sidewalk, in which 'one portion of the sidewalk . . . was approximately one inch higher than another portion,' 575 So. 2d at 1096, was evidence of a defect in the sidewalk and created 'a genuine issue of material fact, suitable for jury determination.' *Id.* at 1097." *Howard*, 757 So.

---

[6]To be clear, expert testimony is not required under Alabama law in a slip and fall case, but it is a common method by which a plaintiff is able to meet the defect burden. *Fowler v. CEC Entertainment*, 921 So. 2d 428, 435 (Ala. Civ. App. 2005) (Crawley, P. J., concurring in part and dissenting in part) ("Although it is true that the plaintiffs in many of our premises-liability cases have submitted expert testimony indicating that the claimed defects in the premises were tripping hazards, we have never held that a plaintiff is required to present expert testimony on that issue.").

2d at 1211-12. However, unlike *Stephens*, Vining lacks any lay witness testimony substantiating that one portion of the concrete "was approximately one inch higher than another portion" from which a jury could reasonably conclude that the concrete irregularity created a danger.

Instead, Wal-Mart has offered evidence which tends to show a lack of danger. (*See* Doc. #8 at Ex. 4 ¶ 5 ("Based on my review of the customer incident reports from the store, as well as my memory of having been risk control leader for four years, there were no other similar accidents in which customers tripped or otherwise were caused to fall allegedly because of the height differential in the segments of concrete [installed in 1995] in this part of the garden center.")); *cf. Fowler*, 921 So. 2d at 431 ("Green had worked at the Roebuck restaurant location for 13 years. According to Green, Fowler's fall was the first and only incident reported with regard to the outside of the restaurant; there had never been a problem with the step while she had been employed at the restaurant.").

The best evidence of a defect offered by Vining is the statement that one of Wal-Mart's agents said to her immediately after the accident: "We have told them about this and they haven't fixed it." While Wal-Mart has not moved to strike this testimony, the court has serious concerns about its admissibility because of the hearsay rule. Assuming the comment is admissible, it is not sufficient, without more,

to reach the unreasonably dangerous evidentiary threshold. As a result, Vining has failed to adduce sufficient evidence to support either her negligence or wantonness claim because she is unable to quantify the height differential in any meaningful way (*i.e.*, Vining describes the problem area as a "big place") or to otherwise show that the difference in the height of the concrete flooring and any attendant circumstances created a danger or an "unreasonably dangerous condition or defect." *See Howard*, 757 So. 2d at 1211; *see also Fowler*, 921 So. 2d at 433 ("Fowler also failed to produce any evidence regarding the size of the crack in the step.").

### 2. Alternatively, Wal-Mart is entitled to summary judgment on its open and obvious affirmative defense.

Alternatively, Wal-Mart is entitled to summary judgment because it has met its affirmative burden of demonstrating the application of the open and obvious defense as a matter of law. Factual support for the open and obvious defense includes: (1) Vining's multiple monthly trips to (and consequently her general familiarity with) the Bessemer Wal-Mart; (2) her tendency to park near and enter the Wal-Mart through the garden area; (3) her admission that if she had seen the uneven place prior to the incident that she would not have run her foot into it as she definitely recognized it as a trip hazard; (4) her admission she had no trouble seeing what she described as a "big place" after the incident; (5) her concession that if she had looked down prior

to the incident when she was three to five feet from this uneven place in the concrete that she would have seen it, and would have recognized it as a hazard; (6) her admission that if she had looked down prior to the incident, she would have seen the uneven place and would have walked around it; (7) her confirmation of the bright, sunny conditions in the afternoon hours of the day of the accident; and (8) her acknowledgment about the well-illuminated nature of the garden center area. *Cf. Fowler*, 921 So. 2d at 433 (distinguishing case of *Harley v. Bruno's Supermarkets, Inc.*, 888 So. 2d 525 (Ala. Civ. App. 2004)) ("At the time she tripped, it was 6 p.m. and the parking lot was only illuminated by the light from the inside of the grocery store.").

Based upon these undisputed facts, no reasonable minds could differ that the irregularity of the concrete flooring in the garden center was an open and obvious defect to the reasonable person. While in *Woodward*, summary judgment to the defendant hospital on an open and obvious defense was reversed despite testimony similar to Vining's that "had she been looking down she would not have fallen[,]" Woodward also had the benefit of an expert witness who testified that the contrast in the light coupled with the failure to mark the wheelchair ramp and an appearance of a flat surface all contributed to create an unreasonable defect. *Woodward*, 727 So. 2d at 816-17.

Moreover, this is not a slip and fall case in which Wal-Mart had superior knowledge over Vining as to the uneven nature of the concrete flooring through its creation of or contribution to the condition. *Cf. Denmark v. Mercantile Stores Co., Inc.*, 844 So. 2d 1189, 1195 (Ala. 2002) ("The mere testimony of the Denmarks' children that Mrs. Denmark could have seen the roll of bags under certain circumstances does not satisfy Mercantile's burden of proof on its affirmative defense. This is especially true in light of evidence indicating that Mercantile had superior knowledge of the location of the roll of bags."). "[I]f that superior knowledge is lacking, as when the danger is obvious, the [store owner] cannot be held liable." *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980). Therefore, under the particular circumstances of this case, Wal-Mart has alternatively conclusively established the application of the open and obvious defense to Vining's negligence and wantonness claims stemming from her fall in the garden center of its Bessemer store.

### V.   CONCLUSION

For the reasons explained above, Wal-Mart's Motion for Summary Judgment is due to be granted on the basis of Vining's inability to show an "unreasonably dangerous condition or defect" in the concrete flooring at the Bessemer Wal-Mart where her accident occurred. Alternatively, summary judgment in favor of Wal-Mart

is due to be entered on its affirmative defense of an open and obvious defect. Finally, Vining's Motion to Strike as set forth in her brief (Doc. #10) is due to be **GRANTED** to the extent addressed within this Memorandum Opinion. The court will enter a separate order.

    **DONE** and **ORDERED**, this the 17th day of April, 2006.

                                            **VIRGINIA EMERSON HOPKINS**
                                            United States District Judge